**FACTUAL DATA AND ANALYSIS – AFTER THE ACQUISITION**

1. **Highest and Best Use of the 25.17 Acres**

To understand the impact of the property rights acquired in this matter, one must determine the highest and best use of the 25.17-acres prior to the inverse acquisition by HCC. If HCC had not come along, what is the most likely use of the 25.17 acres? If the free market had been allowed to put the 25.17 acres to its highest and best use, what type of development would have been at the property instead of a community college? And what position would have the Westside Ventures properties been in if the free market had been allowed to put the property to such highest and best use?

As previously outlined in our Scope of Work and in conflict with several points in the Court's Opinion on Partial Summary Judgement, the 25.17 acres <u>was not</u> restricted solely to Single Family Residential Use. Indeed, in 2007 when Westside conveyed the 25.17 acres as part of a larger parcel to Kickerillo Company, Inc., Westside restricted the property solely to Single Family Residential Use. Importantly, for any analysis of the After instance, in 2012 this restriction was amended to include office and office warehouse uses. As outlined in the First Amendment to Cash Special Warranty Deed executed June 6, 2012, at the time of HCC's purchase of the 25.17 acres the property was restricted to be:

> "…used solely for Single-Family Residential Use, Office Building Use and/ or Office Warehouse Use."[37]

In developing our opinions of the market value of the Westside properties in the Before instance, we estimated the highest and best use of those properties. A similar analysis must be performed of the subject 25.17-acres. Highest and best use is defined as:

> *The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future.*[38]

There are four criteria that must be met in order for a use to be considered the highest and best use of a given property. That highest and best use must be legally permissible, physical possible, financially feasible, and maximally productive. The appraiser sequentially considers varying land uses against each of these criteria, and culls non-conforming uses from the menu of possible uses depending on various market-driven realities. Following is a summary of the highest and best use of the 25.17-acre property.

Legally Permissible. As set forth above the deed restrictions, laid down by Westside and amended in 2012 prior to the acquisition of the property by HCC in 2019, required that the property be "…used solely for Single-Family Residential Use, Office Building Use and/or Office

---

[37] The Westside deed restrictions recorded in H.C.C.F No. 2007.0597825 (Cash Special Warranty Deed, dated September 28, 2007), as amended by H.C.C.F No. 2012.0274574 (First Amendment to Cash Special Warranty Deed, executed June 6, 2012). The HCC Property is part of the real property described as the "East Tract" in both deed records. A Second Amendment to Restrictions was executed on August 9, 2017, recorded under H.C.C.F No. RP-2017-460924; however, this amendment does not impact the HCC Property.
[38] Uniform Appraisal Standards for Federal Land Acquisitions, 2016

**FACTUAL DATA AND ANALYSIS – AFTER THE ACQUISITION**

Warehouse Use."[39] These restrictions prohibit the use of the property from, for example, multi-family apartments, heavy manufacturing, or retail development. These types of legally non-conforming land uses must be culled from the list of possible highest and best uses of the property.

Physically Possible. In considering physically possible uses, the appraiser considers features within the boundaries of the property. Elements such as the property's size, configuration, utility availability and capacity, proneness to flooding, soil conditions, and other physical descriptors of a given property could further diminish the list of potential uses. In the case of the subject 25.17 acres, there are no material physical limitations that would preclude any of the three legally permissible uses of Single-Family Residential Use, Office Building Use and/ or Office Warehouse Use. All three of these uses remain in consideration for the ultimate highest and best use of the property.

Financially Feasible. Where consideration of physically possible uses related to physical characteristics of the property, consideration of financially feasible uses moves beyond the boundaries of the property. In this analysis the location of the property is analyzed, and consideration is given to how the property's location meets market demand for varying land uses. Importantly, the market will put land to the use that creates the greatest value. Because of this foundational economic principle, it is at this point in the highest and best use analysis that Single-Family Residential Use must be excluded from the list of possible uses. Putting the property to such does not create the greatest value to the land.

Single-Family Residential land within the property's submarket as of the date of the analysis traded well-below $5.00 per square foot. Our market research indicates that land transactions involving the other allowable uses of Office Building Use and/or Office Warehouse Use trade at well-above $5.00 per square foot. In fact, the property adjacent to the 25.17-acres, a property that shares similar deed restrictions prior to the inverse condemnation by HCC, is currently being marketed for office warehouse use. Based upon our analysis, Office Building Use and/or Office Warehouse Use remain financially feasible uses of the property.

Maximally Productive. The maximally productive use of a property is that use among the remaining financially feasible uses that creates the greatest value to the land. Within and beyond the subject market area as of the date of analysis, light industrial development was easily receiving the greatest market demand with lesser demand existing for office development. The property is well situated for such a mix of these uses, and there is significant market evidence that such a mix of uses is reasonably likely at the property. The below aerial photograph identifies the four Westside Ventures properties, the HCC 25.17-acre property, and the Ten West Crossing business park property located immediately across Merchants Way from Westside's Tract D. This type and style of mixed-use development, with a greater emphasis on Office Warehouse Use, would have brought the greatest value to the land and represents the highest and best use of the 25.17 acres prior to HCC's inverse acquisition.

---

[39]The Westside deed restrictions recorded in H.C.C.F No. 2007.0597825 (Cash Special Warranty Deed, dated September 28, 2007), as amended by H.C.C.F No. 2012.0274574 (First Amendment to Cash Special Warranty Deed, executed June 6, 2012). The HCC Property is part of the real property described as the "East Tract" in both deed records. A Second Amendment to Restrictions was executed on August 9, 2017, recorded under H.C.C.F No. RP-2017-460924; however, this amendment does not impact the HCC Property.

**Subject Properties, HCC Property, & Ten West Crossing Business Park Aerial**



The above analysis demonstrates that the planned utilization of the 25.17 acres as Single-Family Residential use as part of a larger mixed-use project was not economically viable. No market participant would have put the 25.17 acres to such a lower and worse use; rather, the market would have put the property to the legally permissible, physically possible, financially feasible and maximally productive use of mixed-use office and office warehouse use. Importantly, this analysis frames the question surrounding what Westside Ventures has lost in terms of HCC's acquisition of the deed restriction benefitting Westside's properties. Is HCC's use of the property as a community college more detrimental to Westside than the stated highest and best use of the property as mixed-use office and/or office warehouse? As will be set forth below, we consider that the property's use as a community college for higher learning is in no way an inferior use to mixed-use office and/or office warehouse use.